# 14-1754-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———— ◆◆ ————

ERNESTO ESPINOZA, Derivatively on Behalf of JPMORGAN CHASE & CO.,

*Plaintiff-Appellant,*

—against—

JAMES DIMON, DOUGLAS L. BRAUNSTEIN, MICHAEL J. CAVANAGH, ELLEN V. FUTTER, JAMES S. CROWN, DAVID M. COTE, LABAN P. JACKSON, JR., CRANDALL C. BOWLES, JAMES A. BELL, LEE R. RAYMOND, STEPHEN B. BURKE, WILLIAM C. WELDON, INA R. DREW, DAVID C. NOVAK,

*Defendants-Appellees,*

JPMORGAN CHASE & CO.,

*Nominal Defendant-Appellee,*

WILLIAM H. GRAY, III,

*Defendant.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

RICHARD C. PEPPERMAN, II
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3493

DARYL A. LIBOW
CHRISTOPHER MICHAEL VIAPIANO
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
(202) 956-7650

*Attorneys for Defendants-Appellees James Dimon, Douglas L. Braunstein,
Michael J. Cavanagh, and Ina R. Drew and
Nominal Defendant-Appellee JPMorgan Chase & Co.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees, by and through the undersigned counsel, certify as follows: Nominal Defendant-Appellee JPMorgan Chase & Co. has no parent company, and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED .......................................................1

STATEMENT OF THE CASE ..........................................................................2

STATEMENT OF FACTS ...............................................................................6

      A.    The Parties ...................................................................................6

      B.    Plaintiff's Demand .......................................................................7

      C.    The Board's Creation of the Review Committee .............................8

      D.    The Review Committee's Investigation and Report ........................9

      E.    The Board's Refusal of Plaintiff's Demand .................................11

      F.    The Complaint ...........................................................................13

      G.    The District Court's Decision .....................................................14

SUMMARY OF ARGUMENT ........................................................................16

ARGUMENT ...............................................................................................21

I.    THE DISTRICT COURT'S DISMISSAL OF THIS
    SHAREHOLDER DERIVATIVE ACTION UNDER RULE 23.1
    SHOULD BE REVIEWED FOR ABUSE OF DISCRETION. ...................21

      A.    Second Circuit Precedent Holds That a Dismissal Under
           Rule 23.1 Is Reviewed for Abuse of Discretion. ...............................21

      B.    There Is Ample Justification for This Precedent. ...............................23

II.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF
    FAILED TO PLEAD WRONGFUL REFUSAL OF HIS DEMAND. ..........25

      A.    The District Court Properly Reviewed the Board's
           Investigation for Gross Negligence Under Delaware Law. ...............26

      B.    The District Court Correctly Held That Plaintiff's
           Conclusory Allegations Fell Far Short of Pleading Gross
           Negligence with the Required Particularity. ......................................31

1.     The Review Committee's Investigation "Went Far Beyond
       What Was Necessary" Under Delaware Law. .....................................31

2.     Plaintiff's Assertion That the Board Failed to Consider
       Certain Supposedly Improper Statements Is Conclusory,
       Belied by the Documents Cited in the Complaint and
       Insufficient to Plead Gross Negligence with Particularity..................33

3.     Plaintiff's Perfunctory Argument Concerning Additional
       "Problems" With the Review Committee's and the Task
       Force's Investigations Should Be Deemed Waived and Is
       Meritless in Any Event.......................................................................38

III.   THE DISTRICT COURT'S DENIAL OF LEAVE TO AMEND WAS
       A VALID EXERCISE OF DISCRETION BECAUSE ANY
       AMENDMENT WOULD BE FUTILE. .......................................................41

CONCLUSION .....................................................................................................47

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Acito* v. *IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ............................................................... 20, 41

*Baron* v. *Siff*,
  1997 WL 666973 (Del. Ch. Oct. 17, 1997) ............................. 19, 29, 33

*Cadle* v. *Hicks*,
  272 F. App'x 676 (10th Cir. 2008) ......................................................... 24

*D. Penguin Brothers Ltd.* v. *City Nat'l Bank*,
  2014 WL 5293242 (2d Cir. Oct. 16, 2014) .......................................... 42

*Elfenbein* v. *Gulf & W. Indus., Inc.*,
  590 F.2d 445 (2d Cir. 1978) ................................................... 17, 24, 46

*Espinoza* v. *Dimon*,
  2014 WL 1303507 (S.D.N.Y. Mar. 31, 2014) .............................. passim

*Freedman* v. *Redstone*,
  753 F.3d 416 (3d Cir. 2014) ................................................................. 24

*Gamoran* v. *Neuberger Berman LLC*,
  536 F. App'x 155 (2d Cir. 2013) ................................................... 22, 25

*Gatz* v. *Ponsoldt*,
  2004 WL 3029868 (Del. Ch. Nov. 5, 2004) ..................... 19, 29, 32, 37

*Gomes* v. *Am. Century Cos., Inc.*,
  710 F.3d 811 (8th Cir. 2013) ............................................................... 25

*Halebian* v. *Berv*,
  590 F.3d 195 (2d Cir. 2009) ......................................................... 17, 21, 22

*Halpert Enters., Inc.* v. *Harrison*,
  2008 WL 4585466 (2d Cir. Oct. 15, 2008) ................................... passim

*Hayden* v. *Cnty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999) .................................................................... 46

*Hirsch* v. *Rochester City Police*,
    2014 WL 4675049 (2d Cir. Sept. 22, 2014) .................................. 45, 46

*In re Boston Sci. Corp. S'holders Litig.*,
    2007 WL 1696995 (S.D.N.Y. June 13, 2007) ............................... 32, 43

*In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.*,
    773 F. Supp. 2d 330 (S.D.N.Y. 2011) ............................................ 30, 36

*In re Pfizer, Inc. Deriv. Sec. Litig.*,
    307 F. App'x 590 (2d Cir. 2009) .......................................................... 43

*Kaster* v. *Modification Sys., Inc.*,
    731 F.2d 1014 (2d Cir. 1984) ............................................... 21, 22, 24

*Krys* v. *Pigott*,
    749 F.3d 117 (2d Cir. 2014) ................................................................ 41

*Ku* v. *U.S. Dep't of Hous. & Urban Dev.*,
    508 F. App'x 14 (2d Cir. 2013) ........................................................... 42

*Lambrecht* v. *O'Neal*,
    504 F. App'x 23 (2d Cir. 2012) .................................. 17, 21, 22, 25, 30

*Levine* v. *Smith*,
    591 A.2d 194 (Del. 1991) ................................................. 18, 31, 32, 34

*Levner* v. *Saud*,
    903 F. Supp. 452 (S.D.N.Y. 1994) ...................................................... 34

*Lewis* v. *Graves*,
    701 F.2d 245 (2d Cir. 1983) ................................................................ 22

*Lukas* v. *McPeak*,
    730 F.3d 635 (6th Cir. 2013) ............................................................... 24

*Mt. Moriah Cemetery* v. *Moritz*,
    1991 WL 50149 (Del. Ch. Apr. 4, 1991) ............................. 19, 35, 36, 40

*Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012) .................................................................................. 39

*Piesco* v. *Koch*,
12 F.3d 332 (2d Cir. 1993) ................................................................................. 23

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Raines*,
534 F.3d 779 (D.C. Cir. 2008) ........................................................................... 24

*Porat* v. *Lincoln Towers Cmty. Ass'n*,
464 F.3d 274 (2d Cir. 2006) .............................................................................. 46

*RCM Sec. Fund, Inc.* v. *Stanton*,
928 F.2d 1318 (2d Cir. 1991) ...................................................................... passim

*Rosenbloom* v. *Pyott*,
765 F.3d 1137 (9th Cir. 2014) ........................................................................... 24

*Ruotolo* v. *City of N.Y.*,
514 F.3d 184 (2d Cir. 2008) .............................................................................. 45

*Scalisi* v. *Fund Asset Mgmt., L.P.*,
380 F.3d 133 (2d Cir. 2004) ........................................................................ 21, 23

*Scattered Corp.* v. *Chi. Stock Exch., Inc.*,
1996 WL 417507 (Del. Ch. July 12, 1996) ....................................................... 39

*Spiegel* v. *Buntrock*,
571 A.2d 767 (Del. 1990) ..................................................................................... 4

*Starr* v. *Firstmark Corp.*,
563 F. App'x 803 (2d Cir. 2014) ....................................................................... 42

*Stepak* v. *Addison*,
20 F.3d 398 (11th Cir. 1994) ............................................................................. 24

*TechnoMarine SA* v. *Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ........................................................................ 20, 41

*Tolbert* v. *Queens Coll.*,
242 F.3d 58 (2d Cir. 2001) .......................................................................... 19, 38

*UBS Fin. Servs. Inc. of P.R.* v. *Union de Empleados de Muelles
de P.R. PRSSA Welfare Plan*,
133 S. Ct. 2857 (2013) ............................................................. 25

*Union de Empleados de Muelles de P.R. PRSSA Welfare Plan*
v. *UBS Fin. Servs. Inc. of P.R.*,
704 F.3d 155 (1st Cir. 2013) .................................................... 24

*United States* v. *Moore*,
949 F.2d 68 (2d Cir. 1991) ............................................... 17, 22

*Westmoreland Cnty. Emp. Ret. Sys.* v. *Parkinson*,
727 F.3d 719 (7th Cir. 2013) .................................................. 24

*Zervos* v. *Verizon N.Y., Inc.*,
252 F.3d 163 (2d Cir. 2001) ................................................... 22

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 15 ........................................... 45

Federal Rule of Civil Procedure 23.1 ................................... passim

## STATEMENT OF THE ISSUES PRESENTED

1.     Should this Court review for abuse of discretion the District Court's determination under Federal Rule of Civil Procedure 23.1 ("Rule 23.1") that Plaintiff, a purported shareholder of JPMorgan Chase & Co. ("JPMorgan"), failed to plead with particularity that the JPMorgan Board of Directors (the "Board") wrongfully refused his litigation demand when (i) this Court repeatedly has applied an abuse-of-discretion standard to review dismissals of shareholder derivative actions under Rule 23.1 and (ii) shareholder derivative actions involve complex, case-specific determinations of whether a plaintiff adequately has alleged wrongful refusal (or demand futility)?

2.     Did the District Court correctly hold that Plaintiff failed adequately to allege that the Board wrongfully refused his demand when the court (i) applied applicable Delaware law to evaluate the Board's investigation in response to the demand under a gross-negligence standard and (ii) found that Plaintiff's conclusory assertion that the Board did not consider one issue raised in his demand – an assertion belied by the materials cited in the complaint – did not plead with the requisite particularity that the Board's investigation was grossly negligent or that the Board's decision to refuse the demand was made in bad faith?

3.     Did the District Court properly exercise its discretion in denying Plaintiff's request for leave to amend his complaint when amendment would have

been futile because Plaintiff failed to identify any new factual allegations that he could plead to cure his failure to allege wrongful refusal of his demand with the particularity required by Rule 23.1?

## STATEMENT OF THE CASE

Plaintiff appeals the District Court's dismissal of a shareholder derivative action arising out of the so-called "London Whale" trading losses suffered in 2012 by a London-based portfolio managed by JPMorgan's Chief Investment Office ("CIO"). Before filing this action, which seeks to assert breach of fiduciary duty claims against certain current and former JPMorgan directors and officers on behalf of JPMorgan, Plaintiff made a demand on the JPMorgan Board to conduct an investigation into CIO's losses and pursue claims against any responsible parties. (A63-70.)

Shortly after the public disclosure of CIO's losses, JPMorgan's Board created a Review Committee of three independent directors to investigate the issues raised by the litigation demands of Plaintiff and other shareholders and to recommend what, if any, action should be taken. (A265-67.) Over the next eight months, the Review Committee, with the assistance of experienced outside counsel and an expert advisor, conducted an exhaustive investigation that involved dozens of interviews of JPMorgan personnel and the review of hundreds of thousands of documents. (A83-84.) At the same time, the Review Committee oversaw a

separate investigation into CIO's losses by a JPMorgan management "Task Force." (A83; A125-6.) With the assistance of its own outside counsel, the Task Force similarly conducted dozens of interviews and reviewed millions of documents and thousands of recorded telephone conversations. (A272.)

At the end of its investigation, the Review Committee issued a report (the "Review Committee Report") concluding that the Board had discharged its oversight duties with respect to CIO. (A403.) The Review Committee also concurred in the substance of the Task Force's separate report (the "Task Force Report") regarding the causes of CIO's 2012 losses. (*Id.*) Based on its extensive investigation and numerous other factors, the Review Committee recommended to the full Board that no litigation be brought against the Company's current and former directors and officers as a result of CIO's losses and that the demands by Plaintiff and other shareholders be refused. (A136.) In making this recommendation, the Review Committee noted that JPMorgan already had implemented (or planned to implement) significant remedial measures in response to CIO's 2012 losses, including the termination of, and significant "clawbacks" of incentive compensation from, the CIO employees with direct or managerial responsibility for the trading that resulted in the losses, plus roughly 50% reductions in the 2012 incentive compensation of both Chairman and CEO James Dimon and former CFO Douglas Braunstein. (A85.)

Following a review and discussion of the Review Committee's recommendation and report, as well as the previously (or to be) implemented remedial measures, and "evaluati[ng] the claims against potential defendants and the likelihood of a recovery of damages" (A85), JPMorgan's ten independent directors "determined that it was not in the best interests of the Company to initiate lawsuits against any former or current employees, officers or directors of the Company" (A84) and refused Plaintiff's and the other shareholders' demands.

After he was advised of the Board's decision (A83-86), Plaintiff filed the instant action, claiming that the Board wrongfully refused his demand. Under applicable Delaware law, a board's decision to refuse a shareholder's demand is protected by the business judgment rule, which is "a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Spiegel* v. *Buntrock*, 571 A.2d 767, 774 (Del. 1990). "The board's ultimate conclusion . . . is *not* subject to judicial review," *Halpert Enters., Inc.* v. *Harrison*, 2008 WL 4585466, at *1 (2d Cir. Oct. 15, 2008) (summary order) (internal quotation marks omitted), only the process by which it arrived at its conclusion can be reviewed.

To overcome the business judgment rule and establish standing to sue on behalf of a corporation, a shareholder must "carry the considerable burden of

showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation." *RCM Sec. Fund, Inc.* v. *Stanton*, 928 F.2d 1318, 1328 (2d Cir. 1991). "The standard by which the directors' actions in conducting an investigation and seeking to inform themselves adequately are to be judged is gross negligence." *Halpert*, 2008 WL 4585466, at *1. As this Court has observed, "few, if any, plaintiffs surmount" the presumption of the business judgment rule. *RCM*, 928 F.2d at 1328.

Applying Delaware law, the District Court correctly dismissed this action because Plaintiff failed to plead with the particularity required by Rule 23.1 that "the Board acted in bad faith or conducted an unreasonable investigation rising to the level of gross negligence." *Espinoza* v. *Dimon*, 2014 WL 1303507, at *5 (S.D.N.Y. Mar. 31, 2014). Indeed, the District Court concluded that the Board's investigation "went far beyond what was necessary to provide [it] with an informed basis [for] rejecting the derivative plaintiff's demand." *Id.* at *6 (internal quotation marks omitted).

On appeal, Plaintiff resorts to challenging the established standard in this Circuit for appellate review of dismissals of shareholder derivative actions under Rule 23.1. Plaintiff abandons all but one of the arguments he advanced below in contending that the Board's refusal of his demand was wrongful. Plaintiff now contends only that the District Court erroneously held that his assertion that the

Board failed to consider certain supposedly improper statements concerning CIO and its trading made by JPMorgan's CEO and CFO was "conclusory."

In short, Plaintiff fails to demonstrate that the District Court erred – under any standard of review – in dismissing this action in its entirety and without leave to amend. This Court should affirm the District Court's decision because Plaintiff's sole substantive argument on appeal – that the Board failed to consider one aspect of his demand – is conclusory and belied by the documents cited in the complaint and properly was rejected by the District Court as insufficient to plead gross negligence with the particularity required by Rule 23.1.

## STATEMENT OF FACTS

### A. The Parties

Nominal Defendant-Appellee JPMorgan is a global financial services firm incorporated in Delaware. (A16 (¶ 19).) Plaintiff-Appellant Ernesto Espinoza purports to be a JPMorgan shareholder. (*Id.* (¶ 18).) The Director Defendants-Appellees are nine current and two former outside (*i.e.*, non-management) directors of JPMorgan.[1] (A19-24 (¶¶ 23-31, 33-34).) James Dimon, JPMorgan's Chairman and CEO, is the only JPMorgan officer who serves on the Board. (A17 (¶ 20).) The other Officer Defendants-Appellees are JPMorgan's former CFO (Douglas

---

[1] Defendant William H. Gray, III, a director of JPMorgan until May 2012, died on July 1, 2013 and voluntarily was dismissed from this action. (Pl.'s Br. at 1 n.1.)

Braunstein), a former co-CEO of JPMorgan's Corporate and Investment Bank (Michael Cavanagh) and JPMorgan's former Chief Investment Officer (Ina Drew). (A17-18, 23 (¶¶ 21-22, 32).)

## B.    Plaintiff's Demand

In May 2012, Plaintiff wrote to the JPMorgan Board to express "concern[] about the damage done to JPMorgan as a result of a loss that currently stands at approximately $3 billion due to a 'failed hedging strategy'" implemented by JPMorgan traders in London responsible for a CIO portfolio.  (A65.)  Plaintiff contended that "CIO was taking positions in credit default swaps and other synthetic credit derivative instruments that did not hedge against its investment exposure, but were to generate riskier short-term profits."  (A66.)  Plaintiff also asserted that Dimon and Braunstein made improper statements about CIO and its trading following initial press reports regarding CIO's trading in April 2012.[2] (A65-66.)   In his letter, Plaintiff identified Dimon, Braunstein, Drew and CIO trader Bruno Iksil (the London-based trader referred to as the "London Whale" in certain press reports) as supposed "culpable parties," along with the Director

---

[2] When Plaintiff made his demand, those statements already were the subject of complaints asserting violations of the federal securities laws.  *E.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-3852 (S.D.N.Y. May 14, 2012).

Defendants (and Dimon) who allegedly "failed to maintain adequate risk management guidelines and internal financial controls." (A68-69.)

Plaintiff demanded that the Board "undertake an investigation of the wrongdoing detailed herein through a committee of the Board consisting of independent and disinterested directors with the assistance of independent outside legal counsel." (A69.) He also insisted that the Company (i) "initiate legal proceedings against those responsible for the wrongdoing and misconduct;" (ii) "claw-back" salaries and bonuses from those employees responsible for CIO's losses; and (iii) "implement corporate governance measures." (A69-70.)

## C.    The Board's Creation of the Review Committee

The Board received several demands from shareholders in addition to Plaintiff asking it to investigate CIO's losses and commence litigation against any responsible parties. (A125 (¶ 4).) In response, the Board created a Review Committee consisting of three outside directors to, among other tasks, examine the issues raised in the shareholders' demands and recommend to the Board what, if any, action should be taken. (A77; A260.) The Review Committee was chaired by JPMorgan's Presiding Director Lee Raymond, retired Chairman and CEO of Exxon Mobil; the other two members of the Review Committee were Laban Jackson, Chairman of the Board's Audit Committee, and William Weldon, Chairman of the Board's Corporate Governance Committee. The Review

Committee retained Robert Mundheim, former General Counsel of the U.S. Department of the Treasury, and Mundheim's law firm, Shearman & Sterling LLP, to act as its counsel. (A83; A125 (¶ 7).) Counsel hired James P. Healy, the former Global Head of the Fixed Income Division at Credit Suisse, as an expert advisor to assist with the analysis of CIO's trading. (A83; A126 (¶ 8).)

The Review Committee's mandate from the Board was broader than addressing the shareholder demands. The Board asked the Committee to (i) conduct its own thorough investigation of CIO's losses, (ii) review the scope of and oversee the separate ongoing investigation of those losses by the management Task Force, (iii) review and, as appropriate, modify remedial actions recommended by the Task Force, (iv) oversee implementation of those remedial actions, and (v) assess JPMorgan's risk management process "as it relates to the issues raised in the CIO Task Force Review." (A266.)

### D.  The Review Committee's Investigation and Report

Over the next eight months, the Review Committee "undertook an extensive investigation and analysis of the matters related to the CIO and the losses, and also considered matters relating to risk management and other control functions at the Company generally." (A83.) With the assistance of its counsel and the expert advisor, the Review Committee, among other things, (i) electronically searched over 21 million electronic and hard-copy documents and analyzed approximately

300,000 documents, (ii) interviewed 22 current and former JPMorgan employees, officers and directors, (iii) participated in another 22 interviews of JPMorgan personnel organized by the Task Force, (iv) met with regulators and surveyed best practices, (v) reviewed Board and Board committee materials, and (vi) "[r]eviewed and commented on remediation steps being implemented at the Company." (A83-84.) The Review Committee also "held 13 formal meetings, plus numerous informal discussions and telephone conferences among members of the Committee and with counsel and the Committee's expert advisor," and it "reported to the other non-management Directors on its work at several Board meetings from June 2012 through January 2013." (A84.)

The Review Committee also concurrently oversaw the "scope and conduct" of the separate investigation of CIO's losses by the JPMorgan management Task Force and its separate counsel. (A83; A126 (¶ 9).) The Task Force was led by Defendant-Appellee Michael Cavanagh, then co-CEO of the JPMorgan Investment Bank (A54 (¶ 108)), who Plaintiff does not allege had any involvement in CIO's 2012 losses or any responsibility for overseeing CIO. The Task Force's review "included a significant number of interviews of current and former JPMorgan employees, and an examination of millions of documents and tens of thousands of audio files." (A272.) Throughout its review, the Task Force "shared and discussed [its] observations with the Review Committee . . . as well as the full

Board." (*Id.*) The Task Force ultimately issued a 129-page report addressing the causes of CIO's 2012 losses and the "comprehensive remedial measures the Firm has undertaken" or planned to undertake in response to those losses. (*Id.*; A377-90.) The Review Committee "concur[red] in the substance of" the Task Force Report. (A403.)

The Review Committee released its own separate report addressing the Board's oversight function with respect to risk management. That report concluded, based on the Review Committee's extensive investigation, that JPMorgan's Board as a whole and the Board's Risk Policy Committee in particular had "discharged their duties with respect to the oversight of the Firm and the CIO." (*Id.*) The report nevertheless recommended "how the practices and processes of the Board and its committees could be enhanced to strengthen the Firm's overall risk management function and the oversight of that function," emphasizing that these recommendations "do not imply that practices or processes in place in 2012 fell below the standard required of directors or caused the CIO losses." (*Id.*)

### E.    The Board's Refusal of Plaintiff's Demand

At a January 15, 2013 meeting of the Board, the Review Committee formally presented its conclusions and recommendations to the non-management directors. (A136.) The Review Committee recommended that no litigation be brought in connection with CIO's losses. (*Id.*) After discussing the Review

Committee's conclusions and recommendations, "the non-management Directors, in the exercise of their business judgment, determined that it was not in the best interests of the Company to initiate litigation against any former or current employees, officers, or directors of the Company and rejected the Demand." (A84.) In arriving at this unanimous decision (A86), the Board considered the following factors:

- The "remedial actions already taken by the Company with the oversight and input of the Board," including the "creation and support of the Management Task Force;" the "revamping of the CIO's mandate, leadership, staffing, governance, and processes;" and the "measures taken to enhance risk management throughout the Company" (A85);

- The "clawbacks" of the maximum permissible amount of previously awarded incentive compensation from the CIO personnel with managerial or direct responsibility for the trading that resulted in the losses, which amounted to "approximately two years' worth of each individual's total compensation" (*id.*; A377);

- The "significant reduction" in incentive compensation of members of both senior JPMorgan management and CIO management, including roughly 50% reductions in Dimon and Braunstein's 2012 incentive compensation (A85; A260; A451);

- The departures or reassignments of certain members of senior management and CIO personnel (A85);

- The results of the Review Committee's and the Task Force's separate investigations (*id.*);

- The "conclusions and recommendations in the Board Review Committee Report, including measures to enhance Board oversight" (*id.*);

- An evaluation of potential claims against, and the likelihood of recovery from, potential defendants (*id.*);

- The ability of individuals to satisfy judgments and the difficulties in collecting on a judgment, particularly in foreign jurisdictions (*id.*);

- The "substantial costs of litigation" and the "effect of litigation brought by the Company on the Company's position in third-party litigation, regulatory investigations, and potential enforcement proceedings" (*id.*);

- The "time and distraction of management and employees in pursuing litigation" (A86); and

- "The effect on employee morale and recruitment and retention of employees" of pursing litigation against current or former employees (*id.*).

The Board thereafter informed Plaintiff and the other shareholders who had made demands of the Board's decision to refuse the demands and the many bases for that decision. (A83-86.)

F.    **The Complaint**

After he was advised that his demand was refused, Plaintiff filed this action seeking to assert breach of fiduciary duty, corporate waste and unjust enrichment claims on behalf of JPMorgan against certain current and former directors and senior officers. (A58-61 (¶¶ 118-36).) Plaintiff argued, without factual support, that the Board's "actions in response to [his] demand demonstrate that it wanted to achieve one predetermined result—a refusal of the demand." (A56 (¶ 112).)

In an effort to overcome the business judgment rule and plead wrongful refusal, Plaintiff asserted, among other things, that (i) the Review Committee and

the executive leading the Task Force were "not independent" (A14 (¶¶ 10, 12)), (ii) the Task Force's investigation "focused only on the events at the end of 2011 and the first several months of 2012, when the CIO's losses were incurred," as opposed to focusing on CIO's "historical development" (A15 (¶ 13)), and (iii) the Task Force and the Review Committee "failed to investigate [the supposedly] improper statements" by Dimon and Braunstein identified in the demand (*id.*).

### G.   The District Court's Decision

The District Court (Hon. George B. Daniels) granted Defendants' motion under Rule 23.1 to dismiss Plaintiff's complaint "in its entirety" for failure to plead wrongful refusal of demand with the requisite particularity. *Espinoza*, 2014 WL 1303507, at *7. The court began its opinion with a recitation of the applicable legal standard, stating that while Rule 23.1 furnishes the applicable pleading standard, "state law provides the substantive law governing a Board's refusal of a demand." *Id.* at *4. "Under Delaware law, the directors' decision [to refuse a demand] 'will be shielded by the business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation.'" *Id.* (quoting *RCM*, 928 F.2d at 1328). The District Court recognized that, under Delaware law, the standard for evaluating a board's investigation is "gross negligence." *Id.* at *5.

-14-

Turning to Plaintiff's arguments, the District Court first rejected Plaintiff's challenge to the independence of the Review Committee members. Following well-established law, the court held that Plaintiff, in making a demand, had "concede[d] the independence of a majority of the board" and thus was precluded from arguing "that the Board's refusal was wrongful because its members were not independent." *Id.* (internal quotation marks omitted).

The District Court then reviewed the scope of the Review Committee's extensive investigation and compared that investigation to others that had been upheld in previous derivative actions, stating that "lesser investigations have routinely been held to be reasonable." *Id.* at *6 (internal quotation marks omitted). The court also determined that Plaintiff's specific contention that the Task Force unreasonably had focused on events in late 2011 and early 2012 was "without merit." *Id.* As the court pointed out, "there is obviously no prescribed procedure that a board must follow" in responding to a demand under Delaware law, *see id.* (internal quotation marks omitted), and the court held that the Task Force's focus on the period when CIO suffered losses was "not evidence that the Review Committee was grossly negligent or that the Board acted in bad faith," *id.*

The District Court rejected the remainder of Plaintiff's arguments, concluding that the complaint "offered only conclusory allegations that the Review Committee's investigation, and the Board's subsequent refusal of Plaintiff's

-15-

demand, rise to the level of 'gross negligence.'" *See id.* at *7. In so ruling, the court recognized that the Board was required neither to issue "a report that expressly addresses each and every issue raise[d] by Plaintiff and the other shareholders who made demands on the Board" nor to respond to every single issue "point-by-point." *Id.* at *6 (internal quotation marks omitted). The court concluded: "The Review Committee's actions, on their face, appear to be presumptively reasonable and in good faith and went far beyond what was necessary to provide the Board with an informed basis for rejecting the derivative plaintiff's demand." *Id.* (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

Plaintiff acknowledges the considerable burden that he faces in pleading with particularity facts that overcome the presumption that the Board acted on an informed basis and in good faith in refusing his demand. (*See* Pl.'s Br. at 16-17, 26.) None of Plaintiff's arguments here demonstrates that the District Court erred in concluding that Plaintiff had failed to satisfy that considerable burden, and this Court should affirm the dismissal of Plaintiff's complaint under Rule 23.1 for failure to plead wrongful refusal of his demand.

1. Under Circuit precedent, this Court reviews dismissals of shareholder derivative action under Rule 23.1 for abuse of discretion. This Court has held that when the sufficiency of derivative allegations "'depends on the circumstances of

the individual case, the standard of review for dismissals based on Fed. R. Civ. P. 23.1 is abuse of discretion.'" *Halebian* v. *Berv*, 590 F.3d 195, 203 (2d Cir. 2009) (quoting *Scalisi* v. *Fund Asset Mgmt., L.P.*, 380 F.3d 133, 137 (2d Cir. 2004)); *Lambrecht* v. *O'Neal*, 504 F. App'x 23, 25 (2d Cir. 2012). Absent a contrary decision by the Supreme Court or this Court sitting *en banc*, these precedents may not be ignored or set aside. *See United States* v. *Moore*, 949 F.2d 68, 71 (2d Cir. 1991). Moreover, this Court's decisions applying an abuse-of-discretion standard of review make good sense. The assessment of the sufficiency of a complaint's allegations under Rule 23.1 in highly fact-bound shareholder derivative actions is best left to the discretion of the District Court. *See Elfenbein* v. *Gulf & W. Indus., Inc.*, 590 F.2d 445, 450 (2d Cir. 1978).

2. Regardless of the appropriate standard of review on appeal, the District Court correctly held that Plaintiff failed to plead particularized facts showing either that the Board acted in bad faith in refusing his demand or that the Board's investigation was so unreasonable that it rose to the level of gross negligence. *See Espinoza*, 2014 WL 1303507, at *5-6.

As the District Court correctly recognized, when assessing a Board's investigation under Delaware law, the appropriate standard is "gross negligence." *See id.* at *5. In observing that a board need not follow a prescribed procedure, issue a report or respond point-by-point to each and every issue raised in a

shareholder demand, *id*. at *6, the District Court correctly applied established principles of Delaware law. Contrary to Plaintiff's suggestion, the District Court never stated that the scope of a board's investigation somehow is beyond judicial review, and Plaintiff's assertion that these established principles apply only in cases involving "partial attacks" on a board's investigation (Pl.'s Br. at 37) is without basis in the case law. Delaware law simply asks whether a board's investigation was grossly negligent and whether the board acted in bad faith in refusing the demand. *See Halpert*, 2008 WL 4585466, at *1; *RCM*, 928 F.2d at 1328.

Applying this well-established standard, the District Court correctly rejected Plaintiff's allegations as conclusory or otherwise insufficient to plead gross negligence or bad faith on the part of the Board with the particularity required by Rule 23.1. As the Delaware Supreme Court has held, the "determination of what matters will (and will not) be considered must necessarily fall within the board's discretion." *Levine* v. *Smith*, 591 A.2d 194, 214 (Del. 1991). Accordingly, Plaintiff's conclusory (and factually inaccurate) assertion that the Board failed to consider certain supposedly improper statements concerning CIO and its trading made by Dimon and Braunstein – the only contention that Plaintiff advances on appeal in arguing wrongful refusal – falls well short of adequately pleading under Rule 23.1 that the Board's efforts to inform itself were grossly negligent. The

Task Force Report, which was prepared by the management Task Force with oversight by the Board Review Committee, addresses these statements (A327-343); that it does not address them to *Plaintiff's* satisfaction (*see* Pl.'s Br. at 40) is insufficient to plead with particularity that the Board failed to consider them. The Board was under no obligation to issue a report that discusses each issue raised by shareholders, *see Gatz* v. *Ponsoldt*, 2004 WL 3029868, at *5 (Del. Ch. Nov. 5, 2004), or to address in its letter to Plaintiff refusing his demand each of the allegations in Plaintiff's demand, *see Baron* v. *Siff*, 1997 WL 666973, at *3 (Del. Ch. Oct. 17, 1997). The Board's letter to Plaintiff expressly states that the Board evaluated "the claims against potential defendants" (A85), and given the identification of the supposedly improper statements in Plaintiff's and other shareholders' demands and the filing of securities fraud actions against Dimon and Braunstein based on those same statements, the only reasonable inference is that the statements were "well known" to and considered by the Board, *see Mt. Moriah Cemetery* v. *Moritz*, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991). Plaintiff has not pled particularized facts to the contrary.[3]

---

[3] Plaintiff makes no effort to develop his perfunctory argument that there were "other problems" with the Task Force's and the Review Committee's investigations (Pl.'s Br. at 43), and thus it should be deemed waived, *see Tolbert* v. *Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001). The so-called problems also are insufficient to plead with particularity gross negligence or bad faith by the Board. (*See infra*, Part II.B.3.)

3. The District Court also did not abuse its discretion in denying Plaintiff's request for leave to amend his complaint. Leave to amend properly is denied when amendment would be futile. *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). As this Court recently held, "[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Plaintiff asserts that there are "many matters that could be addressed with an amended complaint" (Pl.'s Br. at 48), *but he never actually identifies the specific new factual allegations* he would make in an amended complaint that would cure his pleading deficiencies under Rule 23.1. Any relevant information in regulatory settlements, papers filed in related litigation or the documents submitted to the District Court was before the District Court or concerns – if anything – the merits of Plaintiff's underlying claims, not the adequacy of the Board's investigation in response to Plaintiff's demand. *See RCM*, 928 F.2d at 1328 ("Once a demand is made, however, the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit.").

Lastly, there is no "policy" (Pl.'s Br. at 47) of allowing a plaintiff at least one amendment of his complaint in shareholder derivative actions. If a plaintiff

-20-

cannot identify new factual allegations that would cure the deficiencies in the dismissed complaint, then leave to amend should be denied as futile.

## ARGUMENT

## I. THE DISTRICT COURT'S DISMISSAL OF THIS SHAREHOLDER DERIVATIVE ACTION UNDER RULE 23.1 SHOULD BE REVIEWED FOR ABUSE OF DISCRETION.

Although a district court's legal rulings are reviewed *de novo*, *Scalisi*, 380 F.3d at 137, this Court has held that the dismissal of a shareholder derivative action for failure to satisfy Rule 23.1's heightened pleading requirements is reviewed for abuse of discretion. *See*, *e.g.*, *Halebian*, 590 F.3d at 203; *Kaster* v. *Modification Sys., Inc.*, 731 F.2d 1014, 1018 (2d Cir. 1984); *see also Lambrecht*, 504 F. App'x at 25. Plaintiff asks this Court to break with this long-standing Circuit precedent and review *de novo* the District Court's rejection of his allegations under Rule 23.1. (Pl.'s Br. at 19-26.) The Court should decline that invitation.[4]

### A. Second Circuit Precedent Holds That a Dismissal Under Rule 23.1 Is Reviewed for Abuse of Discretion.

As Plaintiff concedes (*see* Pl.'s Br. at 20), this Court has held that when a shareholder appeals the dismissal of a shareholder derivative action based on the

---

[4] Because the District Court's dismissal of Plaintiff's complaint should be affirmed regardless of the standard of review, this Court need not even reach this issue in this case. As addressed *infra*, Part II, Plaintiff's allegations fall well short of adequately pleading that the Board's investigation was grossly negligent or that the Board's rejection of Plaintiff's demand was in bad faith.

"sufficiency" of the complaint's allegations under Rule 23.1, the "standard of review is abuse of discretion." *Kaster*, 731 F.2d at 1018. Indeed, this Court has stated on multiple occasions that whether a shareholder has satisfied Rule 23.1's heightened pleading standard lies within the discretion of the trial court. *E.g.*, *Halebian*, 590 F.3d at 203 ("Where determination of the sufficiency of allegations of futility depends on the circumstances of the individual case, the standard of review for dismissals based on Fed. R. Civ. P. 23.1 is abuse of discretion.") (internal quotation marks omitted); *Lewis* v. *Graves*, 701 F.2d 245, 248 (2d Cir. 1983) ("[T]he decision as to whether a plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies within the discretion of the district court.").[5]

Prior decisions of this Court "are binding . . . in the absence of a change in the law by higher authority or [an] in banc proceeding." *Moore*, 949 F.3d at 71; *see also Zervos* v. *Verizon N.Y., Inc.*, 252 F.3d 163, 171 (2d Cir. 2001)

_____

[5] While the shareholders in *Halebian* and *Graves* contended that demand on the board was futile and therefore excused, those decisions apply with equal force in actions in which shareholders contend that their demands were wrongfully refused. Indeed, this Court has cited *Halebian* for the proposition that the standard of review in a demand-refused derivative action such as this action is abuse of discretion. *E.g.*, *Lambrecht*, 504 F. App'x at 25; *Gamoran* v. *Neuberger Berman LLC*, 536 F. App'x 155, 157 (2d Cir. 2013). Both types of derivative actions involve highly fact-bound, case-specific evaluations of the sufficiency of the shareholder's allegations.

-22-

(acknowledging "rule that one panel is ordinarily bound by prior panel decisions"); *Piesco* v. *Koch*, 12 F.3d 332, 345 (2d Cir. 1993) ("[A] panel of the Court lacks the authority to overrule the prevailing law of the Circuit."). Recent decisions "question[ing] the abuse of discretion standard of review for . . . Rule 23.1" (Pl.'s Br. at 21) do not provide a basis to ignore Circuit precedent. Even the panel in *Scalisi*, which suggested that *de novo* review may be the appropriate standard in demand refused derivative actions, acknowledged "that where determination of the sufficiency of allegations of futility depends on the circumstances of the individual case, the standard of review for dismissals based on Fed. R. Civ. P. 23.1 is abuse of discretion." 380 F.3d at 137 (internal quotation marks omitted).

**B.     There Is Ample Justification for This Precedent.**

There are good reasons for this Court's longstanding application of an abuse-of-discretion standard of review in appeals of the dismissal of shareholder allegations under Rule 23.1. In arguing otherwise, Plaintiff ignores the highly fact-bound nature of the standing inquiry under Rule 23.1 and the weight of authority in other Circuits.

Rule 23.1 determinations often are complicated and vary a great deal from case to case, suggesting that this inquiry should be left to the discretion of the trial court. This Court has observed:

> While th[e] standard for determining when demand may
> be excused is easily articulated, its proper application on

-23-

> any given set of facts has proved elusive. Probably the most straightforward approach is to admit frankly that it lies within the sound discretion of the court to determine the necessity for demand.

*Elfenbein*, 590 F.2d at 450 (internal quotation marks and brackets omitted); *see also Kaster*, 731 F.2d at 1020 (determination of sufficiency of derivative allegations "depends on the unique pleadings of each case under consideration").

The majority of Circuits that have addressed this issue apply an abuse-of-discretion standard when reviewing dismissals under Rule 23.1.[6] *Compare Rosenbloom* v. *Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014); *Freedman* v. *Redstone*, 753 F.3d 416, 423 (3d Cir. 2014); *Cadle* v. *Hicks*, 272 F. App'x 676, 677 (10th Cir. 2008); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Raines*, 534 F.3d 779, 783 n.2 (D.C. Cir. 2008); *Stepak* v. *Addison*, 20 F.3d 398, 402 (11th Cir. 1994) (applying abuse-of-discretion standard), *with Union de Empleados de Muelles de P.R. PRSSA Welfare Plan* v. *UBS Fin. Servs. Inc. of P.R.*, 704 F.3d 155, 162-63 (1st Cir. 2013); *Lukas* v. *McPeak*, 730 F.3d 635, 637 (6th Cir. 2013); *Westmoreland Cnty. Emp. Ret. Sys.* v. *Parkinson*, 727 F.3d 719,

---

[6] The Delaware Supreme Court's decision to review *de novo* dismissals under Court of Chancery Rule 23.1 should not carry particular weight here. That decision does not concern substantive corporate law – a subject on which Delaware decisions rightfully are given added weight (*see* Pl.'s Br. at 23 (citing cases)) – but the proper standard of appellate review.

724 (7th Cir. 2013); *Gomes* v. *Am. Century Cos., Inc.*, 710 F.3d 811, 815 (8th Cir. 2013) (reviewing dismissals *de novo*).[7]

## II. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF FAILED TO PLEAD WRONGFUL REFUSAL OF HIS DEMAND.

Under established Delaware law, "a board's refusal to act on a shareholder's demands is analyzed under the business judgment rule." *Lambrecht*, 504 F. App'x at 27. "The business judgment rule presumes that the board made its decision 'on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Gamoran*, 536 F. App'x at 157 (quoting *Spiegel*, 571 A.2d at 774). "To overcome this presumption, a plaintiff must 'carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation.'" *Lambrecht*, 504 F. App'x at 27 (quoting *RCM*, 928 F.2d at 1328); *see also Gamoran*, 536 F. App'x at 157 ("The only issues to be examined are 'the good faith and reasonableness of [the board's] investigation.'") (quoting *Spiegel*, 571 A.2d at 777). Rule 23.1 imposes a heightened pleading standard in shareholder derivative actions, requiring that a shareholder "state with particularity" the facts

---

[7] The Supreme Court recently granted *certiorari* to resolve this circuit split, but the parties withdrew the appeal. *See UBS Fin. Servs. Inc. of P.R.* v. *Union de Empleados de Muelles de P.R. PRSSA Welfare Plan*, 133 S. Ct. 2857 (2013), *cert. dismissed*, 134 S. Ct. 40 (2013).

giving him or her standing to sue on behalf of the corporation. *See Halpert*, 2008 WL 4585466, at *1 (applying Rule 23.1 pleading standard in demand-refusal case).

The Board's "ultimate conclusion . . . is *not* subject to judicial review," *id.* (internal quotation marks omitted), only the process by which the Board informed itself. "The standard by which the directors' actions in conducting an investigation and seeking to inform themselves adequately are to be judged is gross negligence." *Id.* "[F]ew, if any, plaintiffs" are able to "carry the considerable burden" of pleading wrongful refusal. *RCM*, 928 F.2d at 1328.

Plaintiff's argument here is straightforward and limited: the District Court should have credited his conclusory assertion that the Board failed to investigate certain supposedly improper statements and concluded that such failure constitutes gross negligence. Plaintiff attempts to split this argument in two by contending both that the District Court (i) applied the wrong substantive standard (Pl.'s Br. at 29-38), and (ii) erred in assessing the sufficiency of his allegations under Rule 23.1 (*id.* at 38-44). No matter how it is framed, Plaintiff's argument provides no basis for reversing the District Court's decision.

### A. The District Court Properly Reviewed the Board's Investigation for Gross Negligence Under Delaware Law.

Badly misreading the District Court's opinion, Plaintiff strings together a series of disparate quotations to argue that the court "applied an incorrect rule that any decision by a board to limit the scope of its investigation pursuant to a

shareholder demand is protected by the business judgment rule." (*Id.* at 17.) Plaintiff also contends that the District Court "erred as a matter of law in using the standard applicable to *partial* attacks on an investigation to justify its blind deference to the Board's *near total* failure to investigate the [supposedly] improper statements." (*Id.* at 37 (emphasis in original).) Plaintiff's arguments are wholly without merit.

The opinion below confirms that the District Court identified and applied the correct legal standard. Quoting this Court, the District Court recognized that a board's decision to reject a demand "'will be shielded by the business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation.'" *Espinoza*, 2014 WL 1303507, at *4 (quoting *RCM*, 928 F.2d at 328). The court also correctly stated that a board's investigation should be "reviewed for gross negligence." *Id.* at *6. This is black letter Delaware law in derivative actions contending that a shareholder demand wrongfully was refused.

Nowhere in its opinion does the District Court ever suggest that the scope of a board's investigation somehow is "beyond scrutiny and attack." (Pl.'s Br. at 31.) Rather, as discussed *infra*, Part II.B, the District Court concluded that Plaintiff's conclusory allegations – including the allegation that the Board failed to

-27-

investigate certain statements – fell short of pleading gross negligence. *See Espinoza*, 2014 WL 1303507, at *7. The court expressly held that Plaintiff "alleged no facts with the requisite particularity to overcome the presumption of the business judgment rule and create a reasonable doubt as to the 'good faith' or 'reasonableness' of the Board's investigation."[8] *Id.* at *5; *see also id.* at *7 (concluding that Plaintiff "offered only conclusory allegations that the Review Committee's investigation, and the Board's subsequent refusal of [his] demand, rise to the level of 'gross negligence.'"). To the extent that Plaintiff believes that the standard for pleading wrongful refusal of a shareholder demand is "lopsided" (Pl.'s Br. at 17), his quarrel lies not with the District Court's decision, but with Delaware law.

The portions of the District Court's opinion that Plaintiff selectively quotes all reflect correct statements of Delaware law cited by the court to address specific arguments that *Plaintiff* made below. For example, Plaintiff faults the District Court for observing that "there is 'no prescribed procedure that a board must follow' in responding to a demand." (*Id.* at 30.) As Plaintiff concedes, however, "the law does not dictate the specific procedures for investigating a shareholder demand." (*Id.* at 31.) The District Court correctly invoked this principle in

---

[8] This language plainly rebuts Plaintiff's assertion that "the District Court failed to mention Delaware's 'reasonable doubt' standard." (Pl.'s Br. at 30-31.)

rejecting Plaintiff's argument that the Review Committee's investigation was grossly negligent because the separate Task Force investigation "focused 'on the events at the end of 2011 and the first several months of 2012.'" *Espinoza*, 2014 WL 1303507, at *6. The District Court did not, as Plaintiff suggests, rely on this principle to suggest that the Board had *carte blanche* with respect to the scope of its investigation. Rather, the court held only that the Task Force's decision to "focus" on the relevant events – while reviewing certain general background information – was reasonable and well within the "wide latitude" (Pl.'s Br. at 32 (internal quotation marks omitted)) typically afforded a board in conducting an investigation in response to a shareholder demand. *See Halpert*, 2008 WL 4585466, at *2 ("[i]n any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ") (internal quotation marks omitted).

The District Court also correctly recognized that the Board was under no obligation to "release a report that expressly addresses each and every issue raise[d] by Plaintiff" or to "respond to a shareholder's demand letter 'point-by-point.'" *Espinoza*, 2014 WL 1303507, at *6 (quoting *Baron*, 1997 WL 666973, at *3). Delaware law is clear on both points. *See, e.g.*, *Gatz*, 2004 WL 3029868, at *5 (no requirement in Delaware law that Board issue formal report); *Baron*, 1997 WL 666973, at *3 ("The refusal letter's failure to . . . contain a point-by-point

response to all allegations in the demand letter does not stand for the proposition that the Board did not consider the demand before refusing it."); *see also In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.*, 773 F. Supp. 2d 330, 349 (S.D.N.Y. 2011) ("[T]here is no prescribed procedure or form a Board must follow when responding to a demand letter."), *aff'd sub nom. Lambrecht*, 504 F. App'x 23. Given Plaintiff's argument about what supposedly was "missing from [the] discussion" in the Task Force and Review Committee Reports and the Board's refusal letter (*see* Pl.'s Br. at 35, 40), the District Court properly relied on these principles of Delaware law in concluding that Plaintiff failed adequately to allege that the Board's investigation was grossly negligent.

Finally, there is no basis in Delaware law for Plaintiff's contention that the District Court erroneously applied "the standard applicable to *partial* attacks on an investigation." (Pl.'s Br. at 37.) Plaintiff does not – because he cannot – point to a single decision from this Circuit, Delaware or elsewhere recognizing a different legal standard that supposedly applies when a shareholder "partially attacks" or "nitpicks" a Board's investigation. Rather, the same standard applies in every shareholder derivative action alleging wrongful refusal: the reviewing court must determine whether the board acted in bad faith and whether its efforts to inform

-30-

itself were grossly negligent. *See, e.g.*, *Halpert*, 2008 WL 4585466, at *1. That is precisely what the District Court did here.[9]

**B. The District Court Correctly Held That Plaintiff's Conclusory Allegations Fell Far Short of Pleading Gross Negligence with the Required Particularity.**

**1. The Review Committee's Investigation "Went Far Beyond What Was Necessary" Under Delaware Law.**

Plaintiff's brief avoids a detailed discussion of the Review Committee's comprehensive eight-month investigation. And with good reason: as the District Court correctly found, that investigation "went far beyond what was necessary to provide the Board with an informed basis for rejecting the derivative plaintiff's demand." *Espinoza*, 2014 WL 1303507, at *6 (internal quotation marks omitted).

With the assistance of experienced outside counsel and an expert advisor, the Review Committee (i) conducted or participated in over 40 interviews of current and former JPMorgan employees, officers and directors, (ii) electronically searched over 21 million documents and analyzed approximately 300,000 documents, (iii) reviewed information provided by the Task Force,

---

[9] Notably, one of the cases that Plaintiff argues involved mere "nitpicking" of a board's investigation, *Levine*, actually involved allegations that the Board "did not undertake an investigation" but rather "did nothing." 591 A.2d at 214. Like the District Court here, the Delaware Supreme Court in *Levine* rejected these unsupported allegations as "conclusory" and held that the "trial court was clearly correct in dismissing [the] Amended Complaint for failure to plead particularized facts sufficient to create a reasonable doubt that the [board's] rejection of [the] demand was wrongful because reached in an uninformed manner." *See id.*

(iv) reviewed Board and Board committee materials, (v) met with regulators, (vi) collected and reviewed relevant news reports, (vii) surveyed best practices, and (viii) reviewed and commented on remediation efforts implemented by JPMorgan. (A83–A84.) In addition, "[t]he Review Committee held 13 formal meetings, plus numerous informal discussions and telephone conferences among members of the Committee and with counsel and the Committee's expert advisor." (A84.) The Review Committee also reported on its work to the non-management directors at several meetings of the Board. (*Id.*)

The thoroughness – and reasonableness – of the Review Committee's investigation is undeniable when compared to other investigations that have been upheld. As the District Court observed, "lesser investigations have routinely been held to be reasonable." *Espinoza*, 2014 WL 1303507, at *6. For example, in *Gatz*, 2004 WL 3029868, at *5, the Delaware Court of Chancery held that plaintiffs had failed to raise a reasonable doubt as to the reasonableness of a board committee's investigation even though the committee interviewed only two individuals and did not issue a report. *See also In re Boston Sci. Corp. S'holders Litig.*, 2007 WL 1696995, at *5 (S.D.N.Y. June 13, 2007) (not unreasonable for committee to rely on report prepared by counsel "without the benefit of any interviews, relying only upon the evidence already gathered in" prior litigation); *Levine*, 591 A.2d at 214 (upholding refusal of demand even though board did not form review committee or

retain counsel); *Baron*, 1997 WL 666973, at *2-3 (upholding refusal of demand via letter dated nine days after demand was received that did not state that directors even met to discuss demand). Given this body of case law, the Review Committee's exemplary investigation can hardly be characterized as grossly negligent. *See Halpert*, 2008 WL 458466, at *2 (Board's efforts to inform itself were not unreasonable when "[c]ounsel for the Audit Committee conducted a five-month investigation, interviewed 40 people [and] reviewed numerous documents") (internal quotation marks omitted).

**2. Plaintiff's Assertion That the Board Failed to Consider Certain Supposedly Improper Statements Is Conclusory, Belied by the Documents Cited in the Complaint and Insufficient to Plead Gross Negligence with Particularity.**

Faced with the Review Committee's comprehensive investigation, Plaintiff argues only that the Board's purported "failure to investigate [certain supposedly] improper statements . . . raise[s] a reasonable doubt that the Board exercised proper business judgment in rejecting Plaintiff's Demand." (Pl.'s Br. at 39.) That conclusory assertion is far from sufficient to plead with the particularity required by Rule 23.1 that the Board's investigation was grossly negligent.

A plaintiff cannot challenge a board's investigation in response to a shareholder demand by making a conclusory assertion that the investigation failed to address some topic. As the Delaware Supreme Court has held, bald allegations that a board failed to conduct an investigation are insufficient to plead wrongful

-33-

refusal with the requisite particularity under Rule 23.1. *See Levine*, 591 A.2d at 214 ("Plaintiff's remaining allegations, that [the] Board, after receiving [the] demand letter 'did not undertake an investigation' and 'did nothing,' represent conclusory allegations").[10]

Delaware law also makes clear that, while a board has a duty to act on an informed basis, "there is . . . no prescribed procedure that a board must follow" in responding to a shareholder's demand. *Levine*, 591 A.2d at 214). Indeed, "a determination of what matters will (and will not) be considered must necessarily fall within the board's discretion." *Id.* The Review Committee conducted a comprehensive investigation in response to demands by Plaintiff and other shareholders and also oversaw the Task Force's separate extensive investigation into the causes of CIO's losses. The supposedly improper statements by Dimon and Braunstein concerned CIO's losses (Pl.'s Br. at 35), and it was well within the discretion of the Committee and ultimately the full Board to determine whether and how much of its investigation to devote to any particular issue raised in the shareholder demands. As the Delaware Court of Chancery has recognized, "[i]nevitably, there will be potential . . . leads that the investigator will decide not

---

[10] Although the Delaware Supreme Court was evaluating the sufficiency of allegations under Delaware Rule of Chancery 23.1, that rule is "either identical to or consistent with the principles behind [Rule] 23.1." *Levner* v. *Saud*, 903 F. Supp. 452, 456 n.4 (S.D.N.Y. 1994), *aff'd*, 61 F.3d 8 (2d Cir. 1995).

to pursue." *Mt. Moriah*, 1991 WL 50149, at *4. This well-established principle of broad deference to the board in defining the scope of its investigation "is derived from the underlying norm of the business judgment rule – when making a business decision . . . a board must be free to exercise its broad discretion without excessive judicial fetters." *Halpert*, 2008 WL 458466, at *2.

Moreover, the documents cited in Plaintiff's own complaint show that the Board in fact did consider the supposedly improper statements by Dimon and Braunstein that Plaintiff identified. The Task Force Report contains an extensive discussion of what Dimon and Braunstein knew when they made those April 13, 2012 statements about CIO and its trading. (A327-343.) In fact, that report provides a day-by-day account of the information about CIO's trading positions provided to Dimon and Braunstein during the period April 5 to April 13, 2012. (A333-41.) The Task Force Report's failure to specifically cite the elements of a securities fraud claim – as Plaintiff apparently would have preferred (*see* Pl.'s Br. at 41-42) – is not a sufficient basis to plead with the required particularity that the Review Committee, which oversaw the Task Force's investigation, or the Board did not consider the propriety of the challenged statements.

In addition, by the time the Review Committee conducted its investigation, several shareholders, including Plaintiff, had made demands alleging that Dimon and Braunstein made improper statements in April 2012, and shareholder class

-35-

actions had been filed against JPMorgan, Dimon and Braunstein alleging violations of the federal securities laws based on the same statements. *E.g., In re JPMorgan*, No. 12-3852 (S.D.N.Y.). It is thus unreasonable to infer (and Plaintiff certainly has not alleged particularized facts that establish) that when the Board wrote that its refusal of Plaintiff's demand was based, in part, on "[a]n evaluation of the claims against potential defendants" (A85), the Board did not consider potential claims against Dimon and Braunstein based on allegedly false and misleading statements. *See Merrill Lynch*, 773 F. Supp. 2d at 347-48 (rejecting assertion that board "undertook no investigation" of certain claims when response letter stated that board considered "potential adverse effect of pursuing the claims outlined in [shareholder's] letters"); *see also Mt. Moriah*, 1991 WL 50149, at *4 (concluding that "the issues raised in the demand letters were 'well known' to the . . . board" based on, among other things, "two class actions and numerous individual suits against [the company] in connection with the same issues").

Plaintiff's few additional allegations do not "confirm[]" (Pl.'s Br. at 40) that the Board did not consider the supposedly improper statements. That the Review Committee Report did not mention the statements certainly does not, as that report narrowly focused on the Board's oversight function with respect to risk management generally and CIO in particular. (A401-19.) As the District Court recognized, the Review Committee "was [not] obligated to release a report that

-36-

expressly addresses each and every issue raised by Plaintiff and the other shareholders who made demands on the Board." *Espinoza*, 2014 WL 1303507, at *6; *see also Gatz*, 2004 WL 3029868, at *5 ("[T]here is no authority that suggests that Delaware requires a formal 'report' as a matter of law") (internal quotation marks omitted). The Board's decision not to mention the statements in its refusal letter also is an insufficient basis to plead gross negligence or bad faith under Rule 23.1. "Delaware law is clear that a board of directors need not respond to a shareholder's demand letter 'point-by-point.'" *Espinoza*, 2014 WL 1303507, at *6 (quoting *Baron*, 1997 WL 666973, at *3). A contrary rule – one requiring a board to address each and every issue raised in a demand – would be antithetical to the business judgment rule, which presumes that the board acted in good faith and in an informed manner.

Plaintiff's allegation that the Board "failed to make corporate governance changes and take other steps to remedy the [supposedly] improper statements" (Pl.'s Br. at 41) also does not plead with the required particularity that the Board was grossly negligent in failing to consider these statements. Plaintiff's contrary argument rests on the baseless assumptions that the Board would have (i) found the statements improper if it had investigated them, and (ii) determined that further

remedial measures were necessary.  Neither of these assumptions finds any support in particularized factual allegations in the complaint.[11]

The District Court's decision not to credit Plaintiff's conclusory assertion that the Board did not consider the supposedly improper statements was not erroneous.  In view of the Review Committee's comprehensive, eight-month investigation, the District Court correctly held that Plaintiff failed adequately to plead under Rule 23.1 that the Board was grossly negligent.

### 3.  Plaintiff's Perfunctory Argument Concerning Additional "Problems" With the Review Committee's and the Task Force's Investigations Should Be Deemed Waived and Is Meritless in Any Event.

Plaintiff's brief devotes two sentences to arguing that certain additional "problems" with the Review Committee's and the Task Force's investigations "raise further reasons to doubt" that the Board properly exercised its business judgment in refusing his demand.  (Pl.'s Br. at 43.)  This cursory, undeveloped argument should be deemed waived.  It also is meritless.

Issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Tolbert*, 242 F.3d at 75 (internal

---

[11] Plaintiff's assertions that "the issues regarding the false statements were material" (*e.g.*, Pl.'s Br. at 40) are beside the point.  Given Plaintiff's failure adequately to plead that the Board disregarded these statements or was otherwise grossly negligent, their materiality is of no moment.

quotation marks omitted). "Merely mentioning or simply stating an issue in an appellate brief is insufficient to preserve it for . . . review: an appellant must advance an argument, and [the Court] generally will decline to consider issues that are not sufficiently argued." *Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (internal quotation marks and brackets omitted). Plaintiff makes no attempt to explain why these supposed "problems" are sufficient to plead that the Board's investigation was grossly negligent or that the refusal of the demand was in bad faith. They thus should be disregarded as waived.

Moreover, Plaintiff's two-sentence argument fails to show that the District Court erred in dismissing the complaint. *First*, Plaintiff did not allege in his demand that Dimon had a role in "transforming the CIO" (*see* A65-A70), so he cannot now complain that the Board did not consider that particular allegation. *See Scattered Corp.* v. *Chi. Stock Exch., Inc.*, 1996 WL 417507, at *3-4 (Del. Ch. July 12, 1996). The allegation also is baseless: the Board considered the Task Force Report, which discusses the origin and purpose of the CIO portfolio that suffered losses in 2012 and the changes to that portfolio in late 2011 and 2012. (A293-A317.)[12]

---

[12] The fact that the two reports do not expressly address the possibility that Dimon was involved in "transforming" CIO is, again, irrelevant. The Board was

(footnote continued)

-39-

*Second*, Plaintiff has failed to plead with sufficient particularity that the "time period" evaluated by the Board was "unreasonably narrow." (Pl.'s Br. at 44.) Plaintiff argued below that the Task Force's decision to "focus" on the events leading up to CIO's losses was unreasonable because various regulators reviewed "the historical development of the CIO and its synthetic credit portfolio." (A534.) As the District Court correctly held, however, the Task Force's decision to "focus" on the events in 2011 and 2012 – the period during which the London-based portfolio suffered losses – was not grossly negligent. *See Mt. Moriah*, 1991 WL 50149, at *3-4. Moreover, the Task Force "reviewed certain general background information" on the origin and development of the relevant CIO portfolio. (A294.) And the Task Force Report was only one of many factors that the Board considered in refusing the demand.

*Third*, any argument challenging the "independence . . . of the Review Committee and the Task Force" (Pl's Br. at 44) "is easily dispensed with." *Espinoza*, 2014 WL 1303507, at *5. By making a demand, Plaintiff "'concede[d] the independence of a majority of the board.'" *Id*. (quoting *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009)). Additionally,

---

(footnote continued)

not obligated to issue a report or refusal letter that explicitly addressed each and every one of Plaintiff's allegations. *See supra*, Part II.B.2.

-40-

Plaintiff's challenge to the independence of Cavanagh – the executive who led the Task Force – is irrelevant because the Review Committee oversaw the Task Force's investigation and conducted its own separate investigation.

### III. THE DISTRICT COURT'S DENIAL OF LEAVE TO AMEND WAS A VALID EXERCISE OF DISCRETION BECAUSE ANY AMENDMENT WOULD BE FUTILE.

The decision whether to allow a plaintiff to amend his or her complaint "is left to the sound discretion of the district court." *Acito*, 47 F.3d at 55. As Plaintiff concedes (Pl.'s Br. at 46), leave to amend properly is denied "if the amendment would be futile." *Krys* v. *Pigott*, 749 F.3d 117, 134 (2d Cir. 2014). Amendment is futile when the "supplementary allegations" do not "cure" the deficiencies in the complaint. *Acito*, 47 F.3d at 55. "A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine*, 758 F.3d at 505.

Whether additional "supplementary allegations" would cure the deficiencies in the original complaint is determined under the applicable pleading standard. *Krys*, 749 F.3d at 134. Here, any amended complaint must satisfy Rule 23.1's heightened pleading standard, which requires that wrongful refusal of a demand be pled "with particularity." *Halpert*, 2008 WL 4585466, at *1.

Plaintiff contends that the District Court abused its discretion in denying his request for leave to amend because it "passed over numerous, substantial facts

demonstrating that amendment would not be futile." (Pl.'s Br. at 19.) Plaintiff points to four categories of "matters that could be addressed with an amended complaint" (*id.* at 48), but he never actually "identifie[s] any new facts that, if pleaded, could cure the deficiencies that led to the dismissal of [his initial] complaint.'" *See Starr* v. *Firstmark Corp.*, 563 F. App'x 803, 806 (2d Cir. 2014) (quoting *Wilson* v. *Merrill Lynch & Co.*, 671 F.3d 120, 140 (2d Cir. 2011)).[13]

*First*, nothing in the "materials Defendants introduced with their motion to dismiss" (Pl.'s Br. at 48) bolsters Plaintiff's arguments that the Board wrongfully refused his demand. Defendants submitted (i) excerpts from the minutes of the Board meetings at which the Review Committee was created and the decision to refuse the shareholders' demands was made, (ii) certain JPMorgan securities filings, and (iii) the publicly released Task Force and Review Committee Reports. (A127-508.) The meeting minutes reiterate information contained in the Board's letters to Plaintiff, which were attached to the complaint. Likewise, the securities

---

[13] Although the District Court did not expressly address Plaintiff's request for leave to amend, "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *D. Penguin Brothers Ltd.* v. *City Nat'l Bank*, 2014 WL 5293242, at *5 (2d Cir. Oct. 16, 2014) (summary order) (internal quotation marks omitted). And, in any event, this Court may "affirm the district court decision on any grounds for which there is a basis in the record . . . 'including grounds not relied upon by the district court.'" *Ku* v. *U.S. Dep't of Hous. & Urban Dev.*, 508 F. App'x 14, 16 (2d Cir. 2013) (quoting *Chesley* v. *Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir. 1991)).

filings contain information included in the complaint and the documents on which it relied: they state that compensation was clawed back from JPMorgan executives and that one purpose of the Review Committee was to examine the issues raised in various shareholder demands. (*See* A262; A451.) And the Task Force and Review Committee Reports, cited in Plaintiff's original complaint, add nothing new to the analysis. *See In re Pfizer, Inc. Deriv. Sec. Litig.*, 307 F. App'x 590, 595 (2d Cir. 2009) (amendment was futile when "proposed new allegations would be no more than variations on the allegations already adjudged to be inadequate by the court").

*Second*, the "developments in . . . government investigations" related to CIO's 2012 losses (Pl.'s Br. at 48) have no bearing on whether the Board's investigation in response to Plaintiff's demand was grossly negligent. The settlements and consent orders with various regulatory agencies to which Plaintiff refers concern allegedly inadequate internal controls. (*See* A572-A689; A819-A837.) Any new allegations based on those settlements would be relevant, if at all, to the merits of Plaintiff's underlying claims, not to whether the Board adequately informed itself about the issues raised by Plaintiff's demand. *See Boston Sci. Corp.*, 2007 WL 1696995, at *6 ("[T]he potential merits of the lawsuit itself are not at issue in the context of a motion to dismiss for failure to show wrongfulness of a demand refusal"). To the extent that Plaintiff is arguing, based on those settlements, that the Board should have reached a different conclusion after its

-43-

investigation, that is an impermissible attack on the Board's ultimate conclusion. *See Halpert*, 2008 WL 4585466, at *1 (board's "ultimate conclusion . . . is *not* subject to judicial review") (internal quotation marks omitted).

*Third*, the supposedly "extensive detail that could be gleaned from related cases" (Pl.'s Br. at 48) provides no basis for granting leave to amend. Plaintiff does not identify the "related cases" or specify the "extensive detail," and he makes no effort to explain how it would allow him to plead with particularity that the Board acted in bad faith or was grossly negligent. In his papers below, Plaintiff argued that "the Securities Class Action and the related demand futility derivative action go into extensive detail on various items that Plaintiff, for simplicity's sake, sought to avoid if possible." (A542.) But neither of these actions involves a demand on the Board, much less the dispositive question here – *i.e.*, whether the Board wrongfully refused Plaintiff's demand. Again, any allegations that Plaintiff could make based on these actions would go to the merits of Plaintiff's underlying claims and thus would do nothing to cure Plaintiff's failure to plead wrongful refusal of his demand. *See RCM*, 928 F.2d at 1328 ("Once a demand is made, however, the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit."). The Board also undoubtedly was aware of the allegations made in these actions when it refused the demand. Further, the fact that this information was known to *Plaintiff* when he

-44-

filed his original complaint weighs further against granting leave to amend. *See Ruotolo* v. *City of N.Y.*, 514 F.3d 184, 191-92 (2d Cir. 2008) (denying leave to amend to add facts known before filing of complaint).

*Fourth*, Plaintiff cannot salvage his deficient complaint by tacking on "additional facts regarding defendant Cavanagh's lack of independence and the Task Force's investigation." (Pl.'s Br. at 48.) As discussed *supra*, Part II.B.3, Cavanagh's supposed lack of independence is beside the point. The Review Committee oversaw the Task Force's investigation, and the Task Force's investigation was not the Board's only source of information in refusing the demand. The Board also relied on the Review Committee's own separate investigation in reaching its decision. These "additional facts" thus would not enable Plaintiff to plead that the Board's investigation was grossly negligent or that the Board acted in bad faith.

Finally, Plaintiff urges this Court to hold that the District Court abused its discretion because there supposedly is a "policy to allow at least one amendment." (Pl.'s Br. at 47.) To be sure, leave to amend should freely be given when justice so requires, *see* Fed. R. Civ. P. 15, but this Court has never adopted a policy that every plaintiff is entitled to "at least one amendment," except perhaps in the case of *pro se* litigants. *See Hirsch* v. *Rochester City Police*, 2014 WL 4675049, at *1 (2d Cir. Sept. 22, 2014) (summary order) ("District courts should generally not

dismiss a *pro se* complaint without granting leave to amend."). And even then, "leave to amend is unnecessary if amendment would be futile." *Id.*[14] A policy allowing every plaintiff one amendment after dismissal of the initial complaint, even if such amendment would be futile, would result in a waste of private and judicial resources through the needless prolongation of lawsuits destined to fail.[15]

---

[14] Even decisions observing that the "usual practice is to grant leave to amend the complaint," *Hayden* v. *Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999), acknowledge that leave to amend properly is denied when amendment would be futile, *id.*; *see also*, *e.g.*, *Porat* v. *Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).

[15] Plaintiff misapprehends this Court's decision *Elfenbein*, 590 F.2d 445. It does not stand for the proposition that the "ideal disposition" in all wrongful-refusal cases "is to grant leave to replead." 590 F.3d at 450. Rather, in *Elfenbein*, the Court confronted the question of whether the "district court's dismissal of the complaint 'without prejudice to its renewal'" should "be read as an order granting the plaintiff leave to amend." *Id.* at 449. The Court wrote, "if the district court had intended that the plaintiff be given an opportunity to amend her complaint, the order should have clearly granted leave to replead," which "*on facts such as these*, . . . would have been the preferable disposition." *Id.* at 450 (emphasis added).

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's dismissal of Plaintiff's complaint, without leave to replead, for failure adequately to plead wrongful refusal of his demand under Rule 23.1.

Dated:     New York, New York
           November 10, 2014

Respectfully submitted,

/s/  Richard C. Pepperman, II

Richard C. Pepperman, II
(peppermanr@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

Daryl A. Libow
(libowd@sullcrom.com)
Christopher Michael Viapiano
(viapianoc@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.,
Suite 700
Washington, D.C. 20006
Telephone:  (202) 956-7500

*Attorneys for Defendants-Appellees James Dimon, Douglas L. Braunstein, Michael J. Cavanagh, and Ina R. Drew and Nominal Defendant-Appellee JPMorgan Chase & Co.*

-47-

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,968 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

/s/  Richard C. Pepperman, II
Richard C. Pepperman, II
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

*Attorneys for Defendants-Appellees*
*James Dimon, Douglas L. Braunstein,*
*Michael J. Cavanagh, and Ina R. Drew*
*and Nominal Defendant-Appellee*
*JPMorgan Chase & Co.*

Dated:  November 10, 2014

# CERTIFICATE OF SERVICE

14-1754-cv      Espinoza v. James Dimon, et al.

      I hereby certify that I caused the foregoing Brief for Defendants-Appellees James Dimon, Douglas L. Braunstein, Michael J. Cavanagh, and Ina R. Drew and Nominal Defendant-Appellee JPMorgan Chase & Co. to be served on counsel via Electronic Mail pursuant to Local Appellate Rule 25.1:

gaguilar@robbinsarroyo.com
jrazzouk@robbinsarroyo.com
tamon@amonlaw.com
libowd@sullcrom.com
peppermanr@sullcrom.com
viapianoc@sullcrom.com
jdickey@gibsondunn.com

      I certify that a PDF of the foregoing Brief for Defendants-Appellees James Dimon, Douglas L. Braunstein, Michael J. Cavanagh, and Ina R. Drew and Nominal Defendant-Appellee JPMorgan Chase & Co. was emailed to civilcases@ca2.uscourts.gov.

      I also certify that (6) six hard copies of the foregoing Brief for Defendants-Appellees James Dimon, Douglas L. Braunstein, Michael J. Cavanagh, and Ina R. Drew and Nominal Defendant-Appellee JPMorgan Chase & Co. were sent to the Clerk's Office by hand delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
40 Foley Square
New York, New York 10007
(212) 857-8576

on this 10th day of November 2014.

Notary Public:

/s/ Ramiro A. Honeywell
RAMIRO A. HONEYWELL